UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| Jerry Dennis Startzell,<br><br>                  Plaintiff,<br><br>         v.<br><br>GARY W. VELIE, a Clallam County Deputy Sheriff; D.R. WATSON, a Clallam County Deputy Sheriff; D. FONTENOT, a Clallam County Deputy Sheriff; and CLALLAM COUNTY, a Washington State Municipal Corporation.<br><br>                  Defendants. | No. C04- 5259RBL<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING ATTORNEY'S FEES |

      This matter is before the Court on Defendants' Motion for Summary Judgment and Request for Award of Attorney's Fees [Dkt. #29]. The Court has considered all pleadings filed in support and opposition of this Motion and the remainder of the file herein.

      In response to his arrest, imprisonment and related alleged mistreatment by Clallam County Sheriff's Department deputies, the plaintiff has sued under § 1983. The plaintiff alleges that the conduct of the deputies on April 8, 2003 violated his constitutional rights to be free from having excessive force used against his person, as well as unreasonable search and seizure. The plaintiff also alleges false imprisonment and the intentional infliction of emotional distress.

ORDER

## FACTUAL BACKGROUND

In approximately 1992, the plaintiff, Jerry Startzell and his wife, Anne, moved to Port Angeles when the plaintiff retired from his full-time work. In approximately 1995, the plaintiff contacted defendant Deputy Velie for help drafting a will. At that time, Deputy Velie was a practicing attorney. While assisting with drafting the will, Deputy Velie learned that the plaintiff's wife had a history of a brain injury. However, the plaintiff does not allege that Deputy Velie was ever given any overt reason to believe this injury affected his wife's ability to convey information truthfully. Apart from the drafting of the will, Deputy Velie and the plaintiff only had occasional, casual contact until April 8, 2003.

On April 8, 2003, the Clallam County Sheriff's Department's dispatch service received a 911 call placed from the home of the plaintiff. This call was classified as a hang-up when the caller never gave identification prior to hanging up. Nevertheless, the caller remained on the line long enough for the operator to hear voices in the background and ask the caller to respond. Immediately following the hang-up, the 911 operator called back and spoke with the plaintiff. During the call back, the operator identified himself as calling from the sheriff's department and informed the plaintiff that a 911 hang-up call had been placed from his address. The operator asked the plaintiff if he knew why the phone call was placed to 911. The plaintiff told the operator that there had been a "heated argument,"(Dkt. # 29, Ex. 1) but not before initially denying knowledge of why the hang-up call occurred. The plaintiff went on to assure the operator that everything was alright and that the hang-up call was an accident. When the operator sought further details from the plaintiff, he responded "conversation over," (*Id.*) and hung up the phone.

After the call, the 911 operator dispatched Deputy Watson to the plaintiff's home. Deputy Velie, who was closer, also responded and arrived first. On arrival, Deputy Velie was admitted into the house by the plaintiff who told Velie that "nothing was wrong." (Dkt. # 31, Velie Decl.) Deputy Velie interviewed Mrs. Startzell out of the presence of the plaintiff. Although he was unable to hear the substance of the conversation, the plaintiff confirms that his wife spoke with the deputy. Also, the plaintiff does not deny his wife made the statements alleged by the defendants. During the interview of Mrs. Startzell, the defendants allege that she stated the plaintiff had thrown a beer can at her which hit her head. She is also alleged to have said that the plaintiff threatened to throw the contents of a beer glass on her. Following his interview with Mrs. Startzell, Deputy Velie returned to the living room and proceeded to arrest the plaintiff.

ORDER

In effecting the arrest, Deputy Velie instructed the plaintiff to place both of his hands behind his back for the purpose of being handcuffed.  The plaintiff alleges that he told Deputy Velie that he had a torn rotator cuff in his left shoulder.  It is unclear whether he specifically told the deputy that this impeded his ability to comply or whether he assumed the deputy understood this to be the result.  Regardless, Deputy Velie proceeded to force compliance by applying pressure to the nerve on top of the plaintiff's wrist in a maneuver termed an "ignition turn."[1]

At that point, Deputy Watson arrived at the residence and was admitted by the plaintiff's wife.  Upon entering, Deputy Watson proceeded to assist Deputy Velie with completing the handcuffing of the plaintiff, whom Deputy Watson characterized as passively resisting.  The plaintiff alleges that he cried out in pain as he was handcuffed and told the deputies that the cuffs were too tight.  He alleges that Deputy Velie proceeded to tighten the cuffs further in response to his complaint.  Deputy Watson also conducted his own interview of the plaintiff's wife, during which Mrs. Startzell is alleged to have confirmed the statement she allegedly made to Deputy Velie, adding that she could not tolerate being hit anymore.  She allegedly told Deputy Watson that, because of a prior head injury, even a slight injury now could kill her.  She is also alleged to have said she was afraid of what her husband would do to her if the deputies left.  After concluding his interview of the wife, Deputy Watson returned to the living room and informed the plaintiff that he was under arrest for Assault 4, Domestic Violence.  The plaintiff asked how the deputies could take the word of a "brain damaged" (Dkt. # 32, Watson Decl.) woman over his.

The plaintiff was transported to jail by Deputy Fontenot who arrived at the residence after the arrest of the plaintiff was completed.  Prior to transporting the plaintiff, Deputy Fontenot obtained a report from the other deputies as to the reason for the arrest and observed physical evidence that he believed supported the deputies report.  The plaintiff alleges that during transport, he told Deputy Fontenot that the handcuffs were causing him pain, and that he (the plaintiff) in fact passed out from the pain during transport to the jail.

---

[1] Defendants' motion states that an "ignition turn" is a "generally accepted use of force technique," which causes the arrestee to rotate his wrist into the proper position to allow for securing handcuffs behind the arrestee's back.  The defendants supply supporting declaration about the acceptability of the technique in law enforcement.  The plaintiff does not dispute whether the "ignition turn" is a generally acceptable use of force, only whether its use was excessive under the facts of this case.

ORDER

On arrival at the jail, the plaintiff was processed by Corrections Officer Wenzl who did not notice any significant injury to the plaintiff beyond minor scrapes on the wrists commonly associated with suspects who resist being handcuffed.  The plaintiff was released the next day (April 9, 2003).  On April 11, 2003, the plaintiff stipulated to a conditional continuance of the criminal case.  One of the conditions was that the plaintiff attend an alcohol and anger management evaluation.  This evaluation did not result in any significant findings.  However, during the course of being interviewed for the evaluation, the plaintiff admitted to "gently tossing" (Dkt. # 30, Ex. 8) a beer can at his wife on the night of his arrest.  In a later deposition, the plaintiff conceded that this statement was truthful.

## ANALYSIS

The defendants move for summary judgment dismissal of all claims.  The defendants argue that the uncontradicted facts establish that the arrest of the plaintiff was conducted with probable cause and that, in any event, the deputies are entitled to qualified immunity.  The defendants further argue that the uncontradicted facts demonstrate that the force used was reasonable within the meaning of the Fourth Amendment. Absent a genuine issue of material fact that the arrest was unlawful or that excessive force was employed by the deputies, the defendants argue the plaintiff cannot prevail on his state law claim of false imprisonment or his intentional infliction of emotional distress claim.  Defendants also move for award of attorney's fees on the grounds that the plaintiff's action is objectively vexatious and frivolous.

**1. Summary Judgment Standard**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

ORDER

**2. Plaintiff's Federal Constitutional Claims Alleging Unreasonable Search and Seizure, and the Plaintiff's State Law Claim of False Imprisonment.**

The plaintiff alleges that the defendants violated his constitutional right to be free from unreasonable search and seizure when the deputies arrested him at his residence and then transported him to jail. To prevail in his § 1983 claim against any of the defendants, the plaintiff would need to show that, at a minimum, the deputies acted under color of law to deprive the plaintiff of a constitutional right. Even should the plaintiff establish a violation of his constitutional rights, the defendants may raise an affirmative defense of qualified immunity. To prevail on this defense, they must demonstrate that they did not know, nor could they have reasonably been expected to know, that their actions violated the plaintiff's constitutional rights.

**a) The search and seizure in the instant case.**

The first question is whether a constitutional right of the plaintiff was violated. Under Washington state law, a law enforcement officer is required to arrest the "primary aggressor" when probable cause exists that an assault of a family member occurred within four hours preceding the officer's response to a domestic violence call. *See* RCW 10.99.030(6)(a); RCW 10.31.100(2)(c). Probable cause is generally considered to be present where "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. *Draper v. United States*, 358 US 307, 313 (1959), quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925).

In the instant case, the deputies were dispatched to the plaintiff's home in response to a 911 call involving potential domestic violence. On arrival at the residence, Deputy Velie interviewed Mrs. Startzell who is alleged to have reported the plaintiff engaged in conduct that falls squarely within the meaning of Washington state's domestic violence statute. *See* RCW 10.99.020(5)(a). The wife now denies ever talking to the deputies, but the plaintiff agrees that she did speak with the deputies at the time of the arrest. Further, the plaintiff does not dispute that his wife made the alleged statements.

The plaintiff's claim that his arrest by the deputies was unreasonable rests solely on his argument that the deputies could not have reasonably taken the word of his brain damaged wife that an assault occurred. To support this argument the plaintiff relies on the fact that Deputy Velie had knowledge of the wife's brain damage prior to April 8, 2003. However, the plaintiff concedes that Deputy Velie had no

ORDER

reason to doubt the wife's truthfulness based on his prior contact with Mrs Startzell. As such, the decision to accept Mrs. Startzell's report of events as trustworthy was reasonable. Also, Mrs. Startzell's statements did not stand alone. They were supported by the 911 calls and physical evidence found at the scene. Additionally, upon their respective arrivals, Deputies Watson and Fontenot made observations of the scene and/or took statements that substantiated the reasonable belief that the plaintiff had committed Assault 4, Domestic Violence. *See United States v. Calandrella*, 605 F.2d 236, 246 (6th Cir.1979) (holding that probable cause can exist based on the collective knowledge of arresting officers). As such, taking the evidence viewed in a light most favorable to the plaintiff, the arrest of the plaintiff was based on probable cause and did not violate his constitutional rights.

### b) Defendants' qualified immunity.

In any event, even if there was a constitutional violation, the defendants are entitled to immunity. Under qualified immunity, public officials are immune from liability unless it was or should have been apparent to the defendants that their actions were unlawful in light of existing law at the time of the arrest. *See Meyers v. Redwood City*, 400 F.3d. 765, 770 (9th Cir. 2005) (holding law officers are immune from liability unless the law clearly proscribes the actions taken); *and see also Case v. Kitsap County Sheriff's Dept.*, 249 F. 3d. 921, 926 (9th Cir. 2001) (holding a Washington state statute providing for the execution of out of state felony warrants constituted grounds for deputies to believe their arrest of the plaintiff was constitutional). In the instant case, the law did not prohibit the actions of the deputies. To the contrary, the law required that the deputies arrest the plaintiff. *See* RCW 10.99.030(6)(a); RCW 10.31.100(2)(c). Accordingly, the defendants are immune from liability as to plaintiff's claims of unreasonable search and seizure.

### c) Plaintiff's state law claim of false imprisonment.

The plaintiff also claims that his arrest and subsequent detention by the deputies constituted the tort of false imprisonment. In Washington state, an arrest is false if it is conducted without a warrant or absent probable cause. *See Noel v. King County*, 738 P.2d 692, 696 (Wash. Ct. App. 1987). In the instant case, the plaintiff's state law claim of false imprisonment fails to state specific material facts that would allow a reasonable jury to find in favor of the plaintiff. As discussed above, the un-controverted evidence supports the existence of probable cause for the arrest. Therefore, the defendants' motion for summary judgment on the plaintiff's § 1983 claims alleging unreasonable search and seizure and state law claim of false

ORDER

1  imprisonment is granted.

2  **3. The Plaintiff's § 1983 Excessive Force Claims.**

3  The plaintiff alleges that the force used to effect his arrest was excessive. Analysis of excessive
4  force claims brought under § 1983 requires identification of the specific constitutional right infringed. *See*
5  *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Claims of excessive force that arise out of an arrest or
6  other seizure of a person by law enforcement officers pertain to the protections of the Fourth Amendment
7  and are analyzed under a reasonableness standard, not a substantive due process approach. *See Graham v.*
8  *Connor*, 490 U.S. 386, 394 (1989). In making a determination about reasonableness, the totality of
9  circumstances must be considered, "including the severity of the crime at issue, whether the suspect poses
10 an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest." *Id.*
11 In the instant case, the excessive force claim pertains to two distinct occurrences: the initial handcuffing of
12 the plaintiff and the alleged subsequent tightening of the handcuffs.

13  **a) The initial handcuffing of the plaintiff.**

14  The Court recognizes that there is a dispute as to whether the plaintiff was actively resisting arrest.
15 The plaintiff concedes he did not comply with Deputy Velie's order to place his hands behind his back, but
16 he argues that because he was physically unable to comply, he cannot be characterized as actively resisting
17 arrest. For the purposes of summary judgment, the Court takes the facts in a light most favorable to the
18 plaintiff and finds that he was not resisting arrest. However, the resolution of whether the plaintiff was
19 resisting arrest is not determinative in deciding if the force used was reasonable. The record shows that the
20 deputies could have reasonably believed they were responding to a serious crime and that the plaintiff (as
21 the alleged aggressor) posed an immediate threat. It is well established that law enforcement officers have
22 the right to use a certain amount of force when making an arrest. *Id.* Even where an arrestee does not
23 resist, a use of force may be deemed reasonable under the totality of the circumstances. *See Forrester v.*
24 *City of San Diego*, 25 F.3d 804, 806-07 (9th Cir. 1994) (holding use of force on non-resisting protestors
25 was reasonable). Given the violent nature of the crime for which the plaintiff was arrested, the
26 circumstances under which the deputies were dispatched and the statements of the wife, the use of
27 handcuffs cannot be considered excessive under the Fourth Amendment. The next question is whether the
28 manner in which the plaintiff was handcuffed was unreasonable.

ORDER

1    The plaintiff alleges that it was unreasonable for the deputies to have forced his hands behind his back after he told Deputy Velie that he had a history of a rotator cuff injury to his left shoulder.  First, any claim of unreasonable conduct on these facts can apply only to Deputy Velie.  The plaintiff does not allege, nor is there any indication in the record, that either Deputy Watson or Deputy Fontenot knew of his pre-existing left shoulder injury at the time of the arrest.  As such, taking the facts in a light most favorable to the plaintiff, the Court concludes for purposes of this analysis that the plaintiff told Deputy Velie of his injured shoulder.  Nevertheless, the facts contained in the record support a determination that, as a matter of law, Deputy Velie's conduct was reasonable within the meaning of the Fourth Amendment.  The record demonstrates that Deputy Velie used a standard law enforcement technique to secure the plaintiff's hands.  Such compliance techniques are not unreasonable merely because they cause discomfort to the arrestee.  *See Id.* (holding the use of pain compliance techniques is reasonable).

    The plaintiff argues that because Deputy Velie was told of the pre-existing shoulder injury, he should have chosen an alternative means of applying the handcuffs to the plaintiff.  This argument ignores the reality that law enforcement officers are often called on to make "split second judgments – in circumstances that are tense."  *See Graham*, 490 U.S. at 394.  "'Not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers' violates the Fourth Amendment." *Id*. quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973).  The plaintiff's statement that a shoulder injury prevented him from willfully complying with Deputy Velie's order falls short of warning that forced compliance would result in pain to the plaintiff.  Also, there is no evidence in the record that Deputy Velie's actions in fact caused injury to the plaintiff's shoulder.  To the extent that any injury is alleged, it is to the plaintiff's wrists, not his shoulder.  A medical exam by a provider of the plaintiff's choosing determined that the plaintiff's alleged symptoms of pain did not originate from his elbow or shoulder.  Therefore, as a matter of law, Deputy Velie's use of accepted law enforcement technique did not constitute the use of unreasonable force.

ORDER

### b) The alleged tightening of the handcuffs by Deputy Velie and alleged subsequent disregard of plaintiff's complaints by Deputies Watson and Fontenot.

Absent "significant probative evidence" a plaintiff's allegations are not sufficient to defeat a properly supported motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The plaintiff alleges that he sustained prolonged injury to his wrists from the misapplication of the handcuffs by Deputy Velie and the subsequent failure of any of the deputies to loosen the handcuffs when he complained. The plaintiff states that the handcuffs as initially applied were too tight, causing him enough discomfort that he cried out and complained to Deputies Velie and Watson, and that Deputy Velie responded to his complaint by securing the handcuffs tighter. The plaintiff also alleges that while he was being transported to jail he complained to Deputy Fontenot about the tightness of the handcuffs and the resulting pain to his wrists. The plaintiff further alleges that the pain to his wrists caused him to pass out while in transport, thus requiring the assistance of other deputies at the jail to remove him from Deputy Fontenot's car.

Viewed in a light most favorable to the plaintiff, the facts do not support the plaintiff's claims as a matter of law. The plaintiff alleges that he was unconscious when he arrived at the jail due to the pain in his wrists, but he offers no evidence of this by way of deposition or affidavit despite claiming that his condition required other deputies to assist Deputy Fontenot in removing him from the car. The only objective evidence of injury is by way of an affidavit from the correction officer who booked the plaintiff. In that affidavit, the correction officer states that the plaintiff had no visible injury to his person other than minor cuts or scrapes to the wrists. Such injuries do not amount to excessive force. *See Rodriguez v. Farrell*, 280 F.3d 1341, 1352 (11th Cir. 2002) (holding "painful handcuffing, without more, is not excessive force...where the resulting injuries are minimal"). The plaintiff has also failed to produce any objective medical evidence that he sustained external or internal injury resulting from the handcuffs.

The record establishes that September 2, 2003 was the first time the plaintiff consulted a medical professional about his alleged injuries. In that instance, the plaintiff was examined by a nurse practioner who failed to notice any scaring or other deformity to the plaintiff's wrist. While the nurse practioner made a preliminary diagnosis of carpal tunnel syndrome, it was based solely on subjective tests that relied on the plaintiff's statements, and not objective observations or tests. On July 13, 2004, the plaintiff

ORDER

underwent a follow-up examination by Regina McGovern, M.D.  Again, as with the nurse practioner, Dr. McGovern was unable to verify the existence of symptoms or signs of injury through objective observation or tests.  Although an electromyogram test was recommended, the plaintiff failed to complete this testing.  As a result, neither medical provider has been able to objectively confirm the preliminary diagnosis of carpal tunnel syndrome made by the nurse practioner.

In the instant case, testimony from the plaintiff's own medical provider and expert has failed to assist the plaintiff in meeting his burden of proof.  A plaintiff's allegations of injury are insufficient to support a claim of excessive force without substantiating medical records or some other objective evidence.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001).  Therefore, as a matter of law, the plaintiff has not met his burden in this case and the defendants' motion for summary judgment is granted as it pertains to all § 1983 excessive force claims.

**4. The Plaintiff's State Law Claim of Intentional Infliction of Emotional Distress.**

A plaintiff must satisfy three elements to prove an intentional infliction of emotional distress claim (IIED): (1) the conduct of the defendants was extreme and outrageous; (2) the defendants undertook the conduct with the intention of causing severe emotional distress or with reckless disregard of that possibility; and (3) the conduct in fact resulted in severe emotional distress to the plaintiff.  *See Robel v. Roundup Corp.*, 59 P.3d 611, 619 (Wash. 2002).  While questions of fact are for the jury, the question of whether the alleged conduct was outrageous and extreme goes to the jury only after the Court makes a determination of whether reasonable minds could differ on this element.  *See Id.*  In the instant case, the plaintiff's IIED claim is based on his arrest by deputies of the Clallam County Sheriff's Department and their related conduct.  However, the arrest was conducted with probable cause and the conduct of the defendants did not deviate from the acceptable norms of law enforcement practice. The Court concludes that a reasonable jury could not find the arrest of the plaintiff or the deputies' related conduct was outrageous or extreme within the meaning of IIED.  The plaintiff cannot prevail in a claim of IIED without proving each of the three elements stated above.  Therefore, summary judgment on the plaintiff's state law claim for intentional infliction of emotional distress is granted in favor of the defendants.

ORDER

**5. Defendants' Request for Award of Attorney's Fees.**

The defendants' request for award of attorney's fees is denied. Accordingly, it is hereby

1. ORDERED that the Defendants' Motion for Summary Judgment [Dkt. #29] is GRANTED as to all claims set forth in the Plaintiff's Amended Complaint [Dkt. #20].

2. ORDERED that the Defendants' Request for Attorney's fees [Dkt. #29] is DENIED.

DATED this 12th day of July, 2005.

*/s/ Ronald B. Leighton*
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

ORDER